We'll hear next Alvarez v. Wright. Thanks. Good morning. Stephen Bergstein for the Plaintiff Appellant. The question on appeal is whether the district court abused its discretion in declining to provide the inmate plaintiff with assigned counsel to litigate his deliberate indifference claim, which was sufficiently meritorious to warrant the assignment of counsel. The way this Court breaks down this issue is you ask a couple of questions. You ask first whether the plaintiff's claim is likely to be of substance, whether there's some chance of success, and we don't ask whether he actually has a triable issue of fact for trial. And then we look at whether the plaintiff, whether he tried to find adequate representation, what his efforts were, his ability to litigate the case on his own, and the complexity of the legal issues. And the district court abused its discretion in finding against the plaintiff on all of these issues. Mr. Bergstein, let me just, if the plaintiff's bone was not protruding from his skin, if that didn't happen, you would acknowledge then that there would be no meritorious claim under these facts, right? So if they delayed an X-ray for 12 hours, he slept, you know, he wasn't in pain such that he couldn't sleep. Well, he was in pain. He did say that the 12-hour delay left him in serious pain. And there's the issue. It's not clear whether the bone was. Wouldn't it be qualified immunity? I mean, is there any case that says delaying 12 hours for an X-ray would be deliberate indifference? I don't think there's any case that has ever found that waiting until the morning, again, assuming the bone is not protruding. Right. I recognize the question that you have a qualified immunity issue because this court hasn't said that a 12-hour delay. But that doesn't mean he can't prevail if he had a lawyer and was able to go to trial because the question is. It would actually prevail if there's no case that has ever said a delay of 12 hours for an X-ray. Well, I don't know if the cases have to be that specific on a qualified immunity question to find that the doctor's entitled to judgment as a matter of law. The fact was that the bone was broken. And it's not clear in the record whether. When the district court was deciding the counsel motions, what evidence was there that the doctor was acting with deliberate indifference? In other words, I believe the timing is the summary judgment motion had been made so the district court had the doctor's affidavit. It had the medical records, which make no mention of protruding bones. What evidence was there to show that this was at night, that the X-ray technician wasn't on duty? What evidence is there of deliberate indifference? The plaintiff says in his paperwork, as a pro se litigant, a lot of it's handwritten, that the nurse told him that she told the doctor that his leg was in a serious condition. Now, the question whether the bone was protruding, it's not clear. But we know he had a broken bone. It was swelling. He looked at his skin and he saw a lump. He was in serious pain. He waits 12 hours. The problem with the district court's ---- We know now that there was a broken bone. But did they know there was a broken bone on the evening in question? That's really the query. Well, the nurse told the plaintiff, when the plaintiff returned from the hospital, that she told the doctor that his leg was in a serious condition, that it may have been broken or there was a bone protruding. The problem ---- Where does this bone protruding come up, except from the prisoner's statement? It's ---- The reason I say is, based on my vast medical knowledge, my understanding is there's something called a compound fracture. And a compound fracture means the bone is protruding. And it's quite a different, considered quite a different condition from a serious fracture in which there is no breaking of the skin. And I'm just wondering, where does this notion that it was a compound fracture come from, except from some ---- Where does it come from other than, oh, it may have been? I mean, what's the evidence that ---- That the bone was in fact protruding other than at one point the prisoner said that. It's his testimony. But again, that's why I concede ---- It wasn't his testimony. It was his written statement about the case. But what we ---- Nothing now. I'm just asking because it does have to do with the seriousness of the situation. I would agree. But what we do know ---- Hold on, Mr. Bergstein. He didn't ---- he testified in his deposition that he didn't know whether the bone was protruding or not. He was asked about that and did not say in his deposition, I saw the bone protruding. Is there a lump in his leg? But ---- Also, I just want to go back to the point Judge Chin make. Why would a judge appoint a lawyer to take, for example, the deposition of the nurse, which I think is what you're suggesting? They should have, with a lawyer, they could have questioned the nurse. Isn't that the key thing that you think could have been done here? And the doctor. And could have done a much better job on summary judgment than this plaintiff could have done. If we think the key issue is whether the bone was protruding or not, why would you appoint someone to depose the nurse if there's no medical? He had his own medical records. When he went to the hospital and they took x-rays, which I think he made reference to, he saw the x-rays. There's no x-ray showing the bone protruding. We would have that, right? If, in fact, the bone was protruding, we would know that without deposing the nurse, wouldn't we? Probably, because when the bone is protruding, it's the most serious break you can have. But his bone was still. Why would a judge appoint someone to take a deposition of a nurse if the plaintiff's own medical records don't show a bone protruding and he didn't testify at his deposition that his bone was protruding? Because there's still a lot we don't know. We don't know. He said he was in substantial pain. The x-ray did show the bones were broken. All they gave him was. Do the x-rays show a protruding bone? No. So there was never a protruding bone? Agreed? Probably not a protruding bone, but. Unless it went back in somehow. But he had a serious break, though. It was a double fracture. And I recognize the questions, and I understand where the Court is coming from, but you have such a limited record here because he doesn't know what he's doing. He can't read. He can't write. He had no lawyer. He's in confinement. You know, you have enough to suggest under this Court's standard that this is a serious enough case for the assignment of counsel. These questions are asking whether he has enough for a jury, but that's not the standard when you're determining whether the district. He never actually asked for a deposition of the nurse, right? He never did that. No, but he didn't. He asked for a deposition of the defendant. He submitted a declaration of an inmate with his summary judgment opposition, right? So even though he wasn't a lawyer, he understood the basics of what was available to him, and he never asked for a declaration from the nurse or to depose the nurse. No, but what does he know about litigation? And he doesn't know about what admissible evidence is necessary to survive summary judgment. District court said we don't know. We have no evidence that the doctor knew the bone was broken. Well, that's because the plaintiff doesn't know what he's doing. He's not a litigator. He's in jail. He can't even read. He had some jailhouse lawyer telling him what to do. Some of these jailhouse lawyers, they do know something about litigation, but that's no substitute for a real lawyer. So on the standard, we have serious enough questions here to justify the assignment of counsel. Thank you. Roberts. Thank you. We'll hear from the other side. Dearington. Good morning. May it please the Court, I'm Assistant Attorney General Robert Dearington representing the defendant, Dr. Carson Wright, in this matter. The district court did not abuse its discretion in denying the plaintiff's motions for appointment of counsel because the district court's decision was well within the range of permissible decisions. Therefore, this court should affirm the district court's grant of summary judgment in favor of Dr. Carson Wright. At the outset of my argument, I want to emphasize the standard of review in this case is abuse of discretion. Although the district court was correct in denying the plaintiff's motions for appointment of counsel, this court is only tasked with determining whether the district court's decision was within the permissible range of decisions. The defendants admit that the district court decision was correct, so it was within that range. Additionally, there's no evidence that the district court's decision was based upon an error of law or an erroneous factual finding. Roberts. Well, I mean, I think the cases say first you look at the likelihood of success, but the district court seemed to focus more on whether the plaintiff had made sufficient efforts to find counsel. Is that an error of law? No, Your Honor. I believe the court was entitled to look at both, and I believe that both issues were addressed. But there's like a conclusory sentence on the merits, the likelihood of success on the merits, without any discussion. That's correct, Your Honor. But as the court pointed out earlier, by the time the district court ruled on both motions for appointment of counsel, the defendant had already filed his motion for appointment of counsel with his own affidavit, as well as the plaintiff's medical records and excerpts from the plaintiff's deposition testimony. So that was available for the court's review when considering the plaintiff, whether the plaintiff's claim had any likelihood of merit. But to Your Honor's point, the court did address the fact that the plaintiff did not demonstrate that he was unable to obtain counsel on his own. When the court – when the district court denied his motions for appointment of counsel, the district court pointed out that in Connecticut there's a law firm that contracts with the State, and it's called Inmates Legal Assistance Program, known as ILAP in Connecticut, which contracts with the State and provides legal services to inmates such as the plaintiff in this case. And the court directed him to reach out to it. And at no point in the plaintiff's filings with his motions for appointment of counsel did he ever indicate that he attempted to reach out to ILAP or that ILAP was somehow unable or unwilling to assist him in this matter. So the district court obviously was not satisfied with his attempt to obtain counsel. From the beginning of this case, it was obvious that this case – the plaintiff had – sorry, that this case had no likelihood of merit. In his complaint, the plaintiff alleges that when he slipped in the shower at his correctional facility, an emergency code was called. He was immediately taken to the medical unit where he received pain medication. He stayed overnight, and then the following morning received x-rays. Although the plaintiff claims in this case that there was a delay in his medical care, the defendant just fundamentally disagrees with that in the sense that the plaintiff received medical care from the moment that he slipped in the shower and staff became aware of it. And this was confirmed in the defendant's motion for summary judgment. Those facts demonstrate that when the plaintiff slipped in the shower, he was immediately transported by stretcher to the medical unit where his leg was placed in a splint. He received ice and received pain medication throughout the night such that he admitted as deposition testimony that he was comfortable enough to actually fall asleep until the following morning when he received an x-ray. So the defendant's position is that there was no delay in medical care. There were decisions made about how to treat him medically overnight until the following morning when the x-ray technician arrived. Would it have been possible to give him an x-ray in the evening? I understand the x-ray technician was only on from like 8 a.m. to 2 or something like that, but could they have called him in to do an emergency x-ray? The record doesn't address Your Honor's issue. I don't believe that that would be an option. I think if that were the case that they would probably have to take him to the nearby hospital for an x-ray. So our position was that there really was no delay in medical care. And the plaintiff alleges that although our position is there's no delay, the analysis of whether waiting 12 hours for an x-ray does not present a meritorious claim under the Eighth Amendment. To date, the plaintiff still has not provided this court with a single case in which the decision to wait 12 hours before performing an x-ray violates the Eighth Amendment. So that's significant for two reasons. One, that it's not a meritorious claim. And two, as Your Honor mentioned, that it's significant for the defendant's qualified immunity analysis. The district court did not address qualified immunity, but that was one thing that was certainly brief with the defendant's motion for summary judgment. The plaintiff, as I discussed earlier, did not demonstrate that he had sufficiently tried to obtain counsel on his own. He didn't reach out to a resource that was available to him. He chose not to and did not present the district court with any reason for why he did not do that. He also demonstrated that he was familiar with a civil procedure. He filed a complaint. He filed a response to the defendant's affirmative defenses. He filed an opposition to the defendant's motion for summary judgment, which included two affidavits, a memorandum of law, and a 56A2 statement. To his point that he, you know, was illiterate, I think Your Honors can look at, only need to look at his third motion for appointment of counsel, in which he wrote a nine page memorandum was submitted in which he makes many of the same arguments and cites to many of the same cases that pro bono counsel argues in his appellate brief today. And so the plaintiff demonstrated that a competent and skillful individual in terms of litigation was filing those pleadings and memoranda. Unless the Court has any other questions, the defendant rests on his brief. Thank you. Thank you very much. We'll hear the rebuttal. I want to emphasize that in the doctor's affidavit on page 47, paragraph 6, he said, I don't recall the nurse giving me any indication that the plaintiff's leg was broken as opposed to the bone protruding. That's sort of an acknowledgment that that's a serious, he's relying on that to get summary judgment on his lack of knowledge. The inference is that if he knew the plaintiff's leg was broken, he would have done something differently. Twelve hours is a long time to be in serious pain, and the plaintiff writes that he now understands that it was never properly responded to and his leg is still in pain and the bone didn't grow back properly. These are all issues that are fair ground for litigation. The question of the plaintiff's access to assistance from other lawyers, he sent out letters to lawyers in Connecticut. Nobody wanted to represent him. I don't think he's required to seek out the inmate legal assistance program, which doesn't really do litigation for inmates. It just gives them legal advice. And he is illiterate. The arguments he made in the record were not written by him. They were written and conjured up by some inmate's legal expert who was in jail. I can assure you, having corresponded with the plaintiff, that he does not have the ability to write or to really think through legal problems. Thank you. Roberts. Thank you. And thank you for taking on the case. We'll reserve decision. We'll hear.